SCOTT J. KAPLAN (SB #143478)
sjkaplan@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Attorneys for Defendants
Precision Castparts Corp. and PCC Flow
Technologies Holdings, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| 9201 SAN LEANDRO, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>PRECISION CASTPARTS CORP., an Oregon corporation; PCC FLOW TECHNOLOGIES HOLDINGS, INC., a Delaware corporation; SULZER PUMPS (US), INC., a Delaware corporation; GRUNDFOS CBS, INC., a Delaware corporation; and DOES 1 THROUGH 25, inclusive,<br><br>    Defendants. | Case No. C 07 4365 EDL<br><br>DEFENDANTS' PRECISION CASTPARTS CORP.'S AND PCC FLOW TECHNOLOGIES HOLDINGS, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS |

**I. INTRODUCTION**

Defendants Precision Castparts Corp. and PCC Flow Technologies Holdings, Inc. ("PCC Flow")[1] move to dismiss plaintiff's state and federal Superfund claims, its First and Second Claims, and its trespass claim, plaintiff's Fourth Claim. PCC Flow is the successor (by merger) to the former owner of property in Alameda County allegedly now owned by plaintiff (the "Property"). PCC Flow's predecessor agreed to indemnify plaintiff's alleged predecessor for

---

[1] Defendants maintain that Precision Castparts Corp., PCC Flow's indirect corporate parent, is not a proper party to this case but recognize that corporate parent liability (or the lack thereof) is a factual issue for summary judgment rather than an issue on the pleadings.

environmental liabilities at the Property, and a dispute has arisen about whether PCC Flow has completely performed the indemnity obligation. PCC Flow contends that its obligations were satisfied in 2001 when plaintiff could have achieved completion of the cleanup by agreeing to a deed restriction. Plaintiff apparently disagrees. However, the material point for the purposes of this motion is that the parties' dispute is a contractual one.

Nonetheless, in an attempt to fit the proverbial square peg into a round hole, plaintiff also asserts Superfund and tort claims, claims that fail on the pleadings. Indeed, the bases for defendants' Rule 12(b)(6) motion are simple ones. First, both the federal and state Superfund statutes exclude petroleum and its constituents from the definition of hazardous substances. Consequently no Superfund liability can arise from the release of the petroleum constituents that are the only allegedly hazardous substances identified in the complaint. Second, as noted above, PCC Flow's alleged liability results from its status as successor to a former owner of the Property. Under California law, a former owner cannot by definition be liable for trespass onto what was its own property.

Thus the issues are simple and, from defendants' perspective, obvious ones. It is not clear why plaintiff refuses to amend, but it is clear that as a matter of law, plaintiff's Superfund and tort claims fail on the pleadings.

## II. FACTS

The facts material to this motion are few. Plaintiff alleges that its predecessor acquired the Property, located in Oakland, in 1995 from Paco Pumps, Inc., a company that PCC Flow had acquired in 1994. (Complaint ¶¶ 13-14.) Paco Pumps and plaintiff's alleged predecessor entered into an Indemnification Agreement that is attached to the complaint. (*Id.* ¶ 15.) PCC Flow agrees that Paco Pumps later merged into it. (*See* Complaint ¶ 13.)

The only allegation in the complaint relating to the identification of alleged hazardous substances at the Property is paragraph 23, which provides:

> On August 21, 2007, Alameda County Health Care Services served a Notice of Responsibility pursuant to Health & Safety Code Sections 2597.1 and 2597.2 advising Plaintiff herein as well as Defendants that each were "Responsible Parties" as defined under 23 C.F.R. Sec. 2720, designating Paco Pumps, Inc., GP Holdings,

> LLC as the primary or active Responsible Party for the investigation and clean up of the site. A true and correct copy of the notice of responsibility is attached hereto as Exhibit B.

The first page of Exhibit B to the complaint (attached hereto for the convenience of the Court) identifies the "Substance" in question as "Gasoline-Automotive (motor vehicle gasoline and additives), leaded and unleaded." The last page of Exhibit B identifies the alleged releases:

> An underground storage tank (UST) was identified on a 1954 Factory Insurance Association Map for the site. An attempt was made in 1992 to find the UST by excavating in the general location shown in the 1954 map. No tank was found but pipes, debris, and possible fill associated with the former UST were observed. Fuel hydrocarbons were detected in soil samples collected from the excavation. Five monitoring wells were installed at the site from 1992 to 1994. Fuel hydrocarbons (TPHg) and benzene, toluene, ethylbenzene, and xylenes (BTEX) were detected in the groundwater samples collected from three of the five monitoring wells. The highest concentrations of TPHg and BTEX were detected in groundwater collected from monitoring well 9MW3, which is located adjacent to the location of the former UST. Based on the evidence of a former UST and soil and groundwater contamination in the area of the former UST, an unauthorized release has occurred.

Thus only the BTEX gasoline constituents and petroleum products are at issue in this case.

### III. ARGUMENT

**A.    Standard for Motion to Dismiss Under Rule 12(b)(6)**

For the purpose of this motion, it is important to stress the obvious: A motion to dismiss only relates to the claims as pled. The question is whether the claims as pled fail to state claims upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Defendants make this point because, in meet-and-confer discussions, plaintiff contended that there were facts not pled that might make their pleading legally sufficient. Defendants invited plaintiff to amend so that they could respond to a "corrected" pleading, but plaintiff refused. Consequently, both defendants and the Court have before them only the facts that plaintiff has alleged and the exhibits to the complaint, and the motion must be decided on those facts and exhibits. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

/ / / / /

/ / / / /

### B. Plaintiff's Federal and State Superfund Claims Are Barred by the CERCLA Petroleum Exclusion

According to the "Notice of Responsibility" from Alameda County Health Care Services Agency attached as Exhibit B to the Complaint, the contaminants at issue are "fuel hydrocarbons" in the soil and groundwater and BTEX (benzene, toluene, ethylbenzene and xylene) constituents in groundwater in the vicinity of a suspected historical UST. A plaintiff is bound by the contents of documents attached to its complaint and incorporated by reference. *Parks Sch. of Bus. Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Walker v. Carnival Cruise Lines*, 63 F. Supp. 2d 1083, 1091 (N.D. Cal. 1999).

Both the federal Superfund statute, the Comprehensive Environmental, Response, Compensation, and Liability Act ("CERCLA"), and the state Superfund statute, the Hazardous Substances Accountability Act ("HSAA"), exclude "petroleum, including crude oil or any fraction thereof" from the definition of a hazardous substance. 42 U.S.C. § 9601(14) (CERCLA petroleum exclusion); Cal. H & S Code § 25317 (HSAA petroleum exclusion). Because liability under both statutes is premised on a release of a hazardous substance as defined therein, plaintiff's state and federal Superfund claims fail on the pleadings. *See, e.g., Ulvestad v. Chevron U.S.A., Inc.*, 818 F. Supp. 292 (C.D. Cal. 1993) (applying petroleum exclusion). BTEX constituents are encompassed by the petroleum exclusion. *Wilshire Westwood Assoc. v. Atlantic Richfield Corp.*, 881 F.2d 801, 804 n.4, 810 (9th Cir. 1989).

Plaintiff has asserted that there might be chemicals requiring investigation and cleanup at the Property not subject to the petroleum exclusion. If plaintiff has a basis for such an allegation, it should amend to make it.[2] If not, its CERCLA and state Superfund claims should be dismissed with prejudice.

---

[2] Even if there are such facts—and plaintiff has provided defendants no evidence there are—pleading the specific CERCLA hazardous substances at issue is not merely a technicality. Identification of the specific hazardous substances requiring investigation and/or cleanup will define the universe of costs potentially recoverable by plaintiff. That is, only those costs related to these substances other than petroleum products would potentially be recoverable.

**C.     Plaintiff's Trespass Claim Should Be Dismissed Because an Owner Cannot Trespass onto Its Own Property**

Plaintiff alleges that defendants are successors to Paco Pumps, the former owner of the Property. However, as a matter of law, an owner cannot trespass onto its own property.

In California, a trespass is an "invasion of the interest in the exclusive possession of land, as by entry upon it." *Capogeannis v. Superior Court*, 12 Cal. App. 4th 668, 673, 15 Cal. Rptr. 2d 796 (1993) (citing *Wilson v. Interlake Steel Co.*, 32 Cal. 3d 229, 233, 649 P.2d 922, 185 Cal. Rptr. 280 (1982)). Further, "one cannot commit an actionable interference with one's own possessory right." *Capogeannis*, 12 Cal. App. 4th at 674.

Plaintiff's trespass claim should be dismissed.

## IV.  CONCLUSION

Defendants' motion should be granted.

DATED:  November 14, 2007.          STOEL RIVES LLP


By: /s/ Scott J. Kaplan
SCOTT J. KAPLAN
Attorneys for Defendants
Precision Castparts Corp. and PCC Flow Technologies Holdings, Inc.