IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 9201 SAN LEANDRO LLC, | No. C-07-04365 EDL |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART WITH LEAVE TO AMEND DEFENDANT'S MOTION TO DISMISS AND CONTINUING CASE MANAGEMENT CONFERENCE** |
| v. | |
| PRECISION CASTPARTS CORP, et al., | |
| Defendants. | |

On August 23, 2007, Plaintiff 9201 San Leandro LLC filed this action against Defendants Precision Castparts Corporation, PCC Flow Technologies Holdings, Inc., Sulzer Pumps (US), Inc., and Groundfos CBS, Inc. seeking relief under CERCLA and the California Hazardous Substance Account Act, and for state law claims of nuisance, trespass and breach of contract.[1] Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Precision Castparts and PCC Flow Technologies Holdings ("Defendants") filed a motion to dismiss Plaintiff's CERCLA and Superfund claims, arguing that these statutes exclude petroleum and its constituents from the definition of hazardous substances, and Plaintiff's trespass claim, arguing that a former owner cannot by definition be liable for trespass onto what was its own property. Plaintiff opposed the motion and Defendants filed a reply. The Court held a hearing on January 8, 2008.

**BACKGROUND**

In 1995, Paco Pumps, a company acquired by Defendant PCC Flow Technologies in 1994,

---

[1] Sulzer Pumps and Grundfos CBS were served as defendants, but Plaintiff voluntarily terminated them as defendants on November 9, 2007 before they made an appearance.

1 sold property at 9201 San Leandro Street in Oakland to Plaintiff's predecessor, GP Holdings.
2 Compl. ¶¶ 13, 14. In September 1995, Paco Pumps and GP Holdings entered into an indemnity
3 agreement under which Paco Pumps indemnified GP Holdings for all costs associated with
4 remediation of contamination on the property. Compl. ¶ 15. In 2000, GP Holdings transferred title
5 to the property to Plaintiff, who is now the successor in interest to the indemnification agreement.
6 Compl. ¶ 16. Defendant Precision Cast Parts is PCC Flow's corporate parent.

7 Prior to 2000 and until 2002, Paco Pumps performed remediation work on the property.
8 Compl. ¶ 17. In November 2004, PCC Flow sold its assets in Paco Pumps to Sulzer Pumps. Compl.
9 ¶ 18. In March 2006, Grundfos CBS acquired Paco Pumps from Sulzer. Compl. ¶ 19.

10 In October 2004, Plaintiff received a report on the property showing significant remaining
11 contamination and that no remediation had taken place since 2002, and that none of the
12 recommendations made by the Alameda County Health Services were undertaken by PCC Flow,
13 Sulzer or Grundfos. Compl. ¶ 20. In August 2007, the Alameda County Health Services served a
14 Notice of Responsibility advising Plaintiff and Defendants that each were Responsible Parties for
15 the investigation and cleanup of the property. Compl. ¶ 23, Ex. B. The Notice states that the
16 contaminating substance on the property is "Gasoline-Automotive (motor gasoline and additives),
17 leaded and unleaded" from an underground storage tank. Compl. Ex. B (stating that "fuel
18 hydrocarbons (TPHg) and benzene, Toluene, Ethylbenzene and xylenes (BTEX) were detected in
19 groundwater samples collected from three of the five monitoring wells" installed on the property
20 after attempts to locate the underground storage tank were unsuccessful. Id.

21 **LEGAL STANDARD**

22 A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may only be granted if
23 "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which
24 would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal may be based
25 on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable
26 legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). In analyzing a
27 motion to dismiss, the Court must accept as true all material allegations in the complaint, and
28 construe them in the light most favorable to the nonmoving party. NL Industries, Inc. v. Kaplan,

2

792 F.2d 896, 898 (9th Cir. 1986).

**DISCUSSION**

**1.     CERCLA and California's Hazardous Substance Account Act ("HSAA")**

To state a claim under CERCLA, 42 U.S.C. § 9607(a), a plaintiff must allege, *inter alia*, that:

> (1) the waste disposal site is a "facility" within the meaning of 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred, id. § 9607(a)(4); and (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that are "consistent with the national contingency plan," id. §§ 9607(a)(4) & (a)(4)(B). [citations omitted]. . . .

Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1152 (9th Cir. 1989). Petroleum products are excluded from the definition of "hazardous substance" under the federal CERCLA statute:

> . . . . The term [hazardous substance] does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas).

42 U.S.C. § 9601(14); Wilsire Westwood Assoc. v. Atlantic Richfield Corp., 881 F.2d 801, 804 (9th Cir. 1989) ("We rule that the petroleum exclusion in CERCLA does apply to unrefined and refined gasoline [including leaded gasoline and its various constituent parts-including benzene, toluene, and xylene] even though certain of its indigenous components and certain additives during the refining process have themselves been designated as hazardous substances within the meaning of CERCLA."). Similarly, the HSAA provides circumstances under which Plaintiff can recover removal and/or remedial action costs from liable parties, which Plaintiff has incurred or will incur to remove or remedy the release or threatened release of California hazardous substances. See Cal. Health & Safety Code §§ 25316-25323. Section 25316 of the HSAA excludes from the definition of hazardous substance "[p]etroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance. . . ." Cal. Health & Safety Code § 25317; Ulvestad v. Chevron U.S.A., Inc., 818 F. Supp. 292 (C.D. Cal. 1993) (applying the state law petroleum exclusion to gasoline and its constituents benzene, toluene, and xylene).

Plaintiff does not dispute that petroleum products are excluded under CERCLA and the

3

HSAA. Rather, Plaintiff argues that under the liberal pleading standards, paragraph forty of the complaint is sufficient to put Defendants on notice that there are non-petroleum based contaminants on the property that are the subject of the CERCLA and HSAA claims:

> Defendants, and each of them, intentionally, recklessly or negligently placed, maintained, purchased, used, or disposed of Hazardous Substances, including without limitation, petroleum and other waste products in the soil, containers, sewer lines, storm drains, systems, and/or equipment in such a manner as to constitute a nuisance, in that Defendants, and each of them, allowed such Hazardous Substances to enter the soil and/or groundwater at and/or near the Property.

Compl. ¶ 40. Plaintiff also acknowledged at the hearing that it has completed some groundwater testing that indicates other non-petroleum contaminants.

In view of the liberal pleading standards, the adequacy of Plaintiff's complaint on this issue is a somewhat close question, but nonetheless falls short. Moreover, Plaintiff has represented that it can amend the complaint to add more detail about non-petroleum contaminants, Defendant's Motion to Dismiss is granted with leave to amend to add that detail. Plaintiff shall file the amended complaint no later than January 22, 2008.

**2.     Trespass**

Defendant argues that because Plaintiff alleges that Defendants PCC Flow and Precision Castparts are successors to Paco Pumps, the former owner of the property, the continuing trespass claim cannot survive because an owner cannot trespass on its own property. See Capogeannis v. Superior Court, 12 Cal.App.4th 668, 673 (1993) (trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it, and stating that "one cannot commit an actionable interference with one's own possessory right."). Plaintiff argues that a former owner can be held liable for a continuing trespass for contamination left behind on the property. See Newhall Land & Farming Co. v. Superior Court, 19 Cal.App.4th 334, 345-46 (1993) ("As noted by the court in Mangini v. Aerojet-General Corp., supra, 230 Cal.App.3d at page 1148, a continuing trespass theory in a situation such as this, i.e., contaminants have been left on the property by a prior owner, is sanctioned by the Restatement Second of Torts. Section 161, subdivision (1) of the Restatement provides "A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it." Under this definition, "tortious conduct" denotes that conduct, whether of act or

4

omission, which subjects the actor to liability under the principles of the law of torts. (Rest.2d Torts, § 6."); see also KFC Western, Inc. v. Meghrig, 23 Cal.App.4th 1167, 1181 (1994) (following Newhall Land & Farming Co. v. Superior Court, 19 Cal.App.4th 334, 345-46 (1993)). Thus, while there is a split of authority, the more recent authority supports Plaintiff and, under the current state of the law, it cannot be said that there are no circumstances under which Plaintiff could be entitled to relief for trespass. Therefore, Defendant's motion to dismiss Plaintiff's trespass claim is denied.

**3.      Case Management Conference**

The case management conference is continued to January 22, 2008 at 3:00 p.m. Counsel may appear by telephone by calling the Court's courtroom deputy at 415-522-3694 with a number for the Court to call on January 22, 2008.

**IT IS SO ORDERED.**

Dated: January 11, 2008

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge