Gerald M. Murphy, State Bar No. 99994
Justin L. Allamano, State Bar No. 229764
Andrew S. Azarmi, State Bar No. 241407
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone No.: 415.356.4600
Fax No.: 415.356.4610
Electronic Mail: gmurphy@luce.com

Attorneys for Plaintiff
9201 SAN LEANDRO, LLC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

9201 SAN LEANDRO, LLC, a California limited liability company,

Plaintiff,

v.

PRECISION CASTPARTS CORP., an Oregon corporation; PCC FLOW TECHNOLOGIES HOLDINGS, INC., a Delaware corporation; SULZER PUMPS (US), INC., a Delaware corporation, GRUNDFOS CBS, INC., a Delaware corporation, and DOES 1 through 25 inclusive,

Defendants.

Case No. C 07 4365 EDL

**SECOND AMENDED COMPLAINT FOR RELIEF UNDER CERCLA, CALIFORNIA HAZARDOUS SUBSTANCE ACCOUNT ACT, NUISANCE, TRESPASS, BREACH OF CONTRACT, INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES**

**NATURE OF ACTION**

This is a civil action brought by 9201 SAN LEANDRO, LLC ("Plaintiff") against PRECISION CASTPARTS CORP ("PRECISION"), PCC FLOW TECHNOLOGIES HOLDINGS, INC. ("PCC"), and DOES 1 through 25 ("DOES" and, collectively with PRECISION, PCC, "Defendants") under Sections 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, ("CERCLA"), 42 U.S.C. § 9607(a), as amended by the Superfund Amendments and Reauthorization Act of 1986, ("SARA"), and other

federal and state laws to recover response costs and other damages that Plaintiff has incurred or will incur in order to assess, characterize, remediate and clean up contamination in the soil and ground water under the Plaintiff's property located in Oakland, California (the "Property").

Plaintiff also seeks a declaration by this Court, pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, that Defendants herein are entirely liable for all costs necessary to respond to and abate the release and threat of release of hazardous substances onto and from the Property. The grounds for such declaratory relief are that Defendants herein owned the Property for many years while hazardous substances were generated and disposed of on or about the Property, and all such disposal occurred prior to Plaintiff's acquisition of the Property. Furthermore, pursuant to the supplemental jurisdiction of this Court over state law claims, Plaintiff seeks declaratory relief and damages against Defendants under the California Hazardous Substance Account Act and for nuisance, trespass, and breach of contract. Finally, Plaintiff asks for a mandatory injunction compelling the specific performance of the Indemnification Agreement that Defendants agreed to abide by, requiring them to perform all acts necessary to assess, characterize, remove or remediate the contamination at the Property, and to comply with all requirements of the responsible government agencies.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b); Section 2201 of the Declaratory Judgments Act, 28 U.S.C. § 2201; and the federal question jurisdiction statute, 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b); 28 U.S.C. § 1391(b) and (c), because the acts, omissions, releases and damages that give rise to these claims occurred in this district; and alternatively, because all Defendants either conduct or conducted business and/or other activities that give rise to these claims within this district.

**INTRADISTRICT ASSIGNMENT**

2. Pursuant to Civil L.R. 3-2(c) and (d), this case shall be assigned to the San Francisco Division or the Oakland Division because the action arises in Alameda County.

**THE PROPERTY AT ISSUE**

3. Plaintiff's Property is located at 9201 San Leandro Street, in the City of Oakland, County of Alameda, State of California. At all times during Defendants' activities, the Property was a "facility" within the meaning of CERCLA Section 101(9), 42 U.S.C. § 9601(9), and the California Hazardous Substance Account Act (the "HSAA"), California Health & Safety Code § 25310.

**THE PARTIES**

4. At all times relevant to this Complaint, Plaintiff was and is a corporation duly organized, existing and licensed to do business in the State of Claifornia, maintaining its principal place of business at the Property.

5. Defendant PCC is a corporation organized and existing in the State of Delaware and authorized to do business in the State of California and is a "Responsible Party" as defined under 23 C.F.R. Sec. 2720.

6. Defendant PRECISION is a corporation organized and existing in the State of Oregon and authorized to do business in the State of California and is a "Responsible Party" as defined under 23 C.F.R. Sec. 2720.

7. Plaintiff is uncertain of the true names and capacities of defendants sued as DOES 1 through 25, inclusive, and therefore sues them by the foregoing fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of said DOE defendants is responsible in some manner for the acts alleged in this Complaint and that Plaintiff's damages were proximately caused by these DOE defendants. Accordingly, Plaintiff will amend this Complaint by inserting the true names and capacities of the DOE defendants when they are ascertained.

8. Plaintiff is informed and believes, and on that basis alleges, that each defendant, including DOES 1 through 25, was and is the agent and employee of each other defendant, and

was, at all times mentioned herein, acting within the course and scope of said agency and employment.

9. Each of the Defendants is a "person," as that term is defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**GENERAL ALLEGATIONS**

10. Plaintiff is informed and believes and, based on such information and belief, alleges that in 1994, PCC acquired the stock of Paco Pumps, Inc., a Delaware corporation, which maintained its principal place of business in the County of Alameda, State of California ("Paco Pumps"), and that at all times mentioned herein, Paco Pumps was a subsidiary of PCC or that PCC was the controlling shareholder of Paco Pumps.

11. At the time of the acquisition of Paco Pumps by PCC, Paco Pumps was the owner of the Property. In 1995, Paco Pumps sold the Property to GP Holdings, LLC ("GP Holdings"), a predecessor in interest to Plaintiff. As part of the sale, Heller Financial Corporation ("Heller") and the United States Small Business Administration ("SBA") agreed to provide funding for GP Holding's purchase of the Property on the condition that Paco Pumps execute a written indemnification agreement under which Paco Pumps would indemnify Heller, the SBA, and GP Holdings, and all of their heirs, successors, and assigns for costs and damages related to environmental contamination of the Property.

12. On September 28, 1995, Paco Pumps executed a written indemnification agreement ("Indemnification Agreement") that obligated Paco Pumps, among other things, to investigate, monitor, and/or remediate all contaminants released into the Property and to indemnify GP Holdings and any successor in interest from and against any liability, damages, fees, penalties, or losses arising out of any demand, claim, or suit by any agency or other party relating to contaminants found to be released onto the Property, prior to the transfer to GP Holdings. A true and correct copy of the Indemnification Agreement is attached hereto as Exhibit A.

13. In April 2000, GP Holdings transferred its right, title and interest in the Property and assigned its interest in the Indemnification Agreement to Plaintiff. Plaintiff is now the owner of the Property and the successor in interest to GP Holdings under the Indemnification Agreement.

14. Beginning at a time prior to the transfer of the Property from GP Holdings to Plaintiff and continuing until 2002, Paco Pumps partially performed remediation work at the Property. During that time, Paco Pumps was a wholly owned subsidiary of PCC, or was controlled by or was merged with PCC. During this period of time, key employees of Paco Pumps, including John Lilla, the former President and responsible managing employee of Paco Pumps who signed the Indemnification Agreement, became employees of PCC. PCC, through John Lilla, engaged Jonas & Associates to perform testing and analysis of soils and water samples from the Property and to respond to the requirements of the Alameda County Environmental Health Services and other government agencies (the "Agencies").

15. In October 2004, Plaintiff received from its environmental consultant, Eras Environmental Inc., a Phase I report on the Property which demonstrates that significant contamination remains on the Property, that no remediation action had been taken since 2002, and that none of the recommendations made by Alameda County Health Services were undertaken by PCC. Significant levels of contamination remain at the Property for which the Alameda County Health Services or other Agencies require remediation for compliance with the Agency's criteria for clearance.

16. At no time prior to or since the acquisition by PCC of Paco Pumps, or any of the subsequent transfers of Paco Pumps, has there been a release of Paco Pumps or its successors from their liability under the Indemnification Agreement by way of novation or otherwise.

17. In 2007, Plaintiff independently demanded that PCC perform their obligations under the Indemnification Agreement. Each of them has failed and refused to do so.

18. On August 21, 2007, Alameda County Health Care Services served a Notice of Responsibility pursuant to Health & Safety Code Sections 2597.1 and 2597.2 advising Plaintiff herein as well as Defendants that each were "Responsible Parties" as defined under 23 C.F.R. Sec. 2720, designating Paco Pumps, Inc., GP Holdings, LLC as the primary or active Responsible Party for the investigation and clean up of the site. A true and correct copy of the notice of responsibility is attached hereto as Exhibit B.

**FIRST CLAIM FOR RELIEF**
(Cost Recovery Under CERCLA §§ 107(a))
(Against All Defendants)

19. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 21, inclusive, as though set forth in full.

20. CERCLA Section 107(a), 42 U.S.C. § 9607(a) provides, in relevant part, that:

21. "(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances . . . shall be liable for . . .
>
> > (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan . . . ."

22. The Defendants, and each of them (a) owned and/or operated, or continued the enterprise or assumed the liability of an entity that owned and/or operated, at the time of disposal, a facility or property at which hazardous substances, as defined by CERCLA Section 101(14), 42 U.S.C. § 9601(14) ("CERCLA Hazardous Substances"), were disposed of, and/or (b) disposed of CERCLA Hazardous Substances at, about or under the Property.

23. There have been actual or threatened releases of CERCLA Hazardous Substances from the Property into the environment, within the meaning of CERCLA Section 101(22), 42 U.S.C. § 9601(22).

24. Specific CERCLA Hazardous Substances include, but are not limited to, 1,1-DCA, 1,2-DCA (commonly known as Dichloroethane), and Polychlorinated Biphenyls ("PCBs"). 1,1-DCA and 1,2-DCA were detected in groundwater tests. At least as of 1995, groundwater tests showed that the amounts of 1,2-DCA were above the Maximum Contaminant Level for drinking

water. Also, a letter from the ACHSA dated August 21, 2007 stated that PCBs had been detected in the soil on the contaminated property. 1,1-DCA, 1,2-DCA, and PCBs are all CERCLA Hazardous Substances.

25. As a result of these actual or threatened releases, Plaintiff has and will continue to incur necessary response costs consistent with the National Contingency Plan (the "NCP"), including, but not limited to, all costs incurred to monitor, assess, characterize and remediate CERCLA Hazardous Substances at the Property, including attorney's fees.

26. Plaintiff has made written demands on Defendants, and by this Complaint, again makes demands on all Defendants, to assess, characterize and remove the CERCLA Hazardous Substances that have been released, or threatened to be released, at the Property. Defendants have not agreed to assess, characterize or remove the CERCLA Hazardous Substances at the Property. As a result of Defendants' failure to respond to, or refusal to comply with Plaintiff's demands, Plaintiff has been required to retain legal counsel to prosecute this action.

27. The Defendants, and each of them, are liable or potentially liable parties under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and are liable for all necessary response costs, consistent with the NCP, incurred or to be incurred by Plaintiff in connection with response actions at the Property.

**SECOND CLAIM FOR RELIEF**
(California Hazardous Substance Account Act)
(Against All Defendants)

28. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 28, inclusive, as though set forth in full.

29. HSAA provides that Plaintiff can recover removal and/or remedial action costs from liable parties, which costs Plaintiff has incurred or will incur to remove and/or remedy the release or threatened release of California hazardous substances, California Health & Safety Code § 25316 ("HSAA Hazardous Substances" and, collectively with CERCLA Hazardous Substances, the "Hazardous Substances") at the Property.

30. The Property is a Site within the meaning of California Health & Safety Code § 25323.9.

31. As alleged herein, Defendants, and each of them, are "liable persons," within the meaning of California Health & Safety Code § 25323.5.

32. There have been actual or threatened "releases" of HSAA Hazardous Substances from or to the Property within the meaning of California Health & Safety Code §§ 25320-25321.

33. Specific HSAA Hazardous Substances include, but are not limited to, 1,1-DCA, 1,2-DCA (commonly known as Dichloroethane), and Polychlorinated Biphenyls ("PCBs"). 1,1-DCA and 1,2-DCA were detected in groundwater tests. At least as of 1995, groundwater tests showed that the amounts of 1,2-DCA were above the Maximum Contaminant Level for drinking water. Also, a letter from the ACHSA dated August 21, 2007 stated that PCBs had been detected in the soil on the contaminated property. 1,1-DCA, 1,2-DCA, and PCBs are all HSAA Hazardous Substances.

34. Plaintiff has incurred, and will continue to incur, costs to perform "removal" and/or "remedial" actions to respond to the HSAA Hazardous Substances released, or threatened to be released, at the Property within the meaning of California Health & Safety Code §§ 25322-25323.

35. Plaintiff is not a person liable under the HSAA, California Health & Safety Code § 25323.3, for costs incurred and, therefore, is entitled to indemnity or contribution and other relief from Defendants, and each of them, for all costs that have been incurred, or will be incurred, in response to the HSAA Hazardous Substances present at the Property.

36. Defendants, and each of them, are liable to Plaintiff for all or a portion of the costs incurred and to be incurred at the Property, together with interest thereon, at the maximum rate allowed by law, as well as attorneys' fees.

**THIRD CLAIM FOR RELIEF**

(Continuing Nuisance)
(Against All Defendants)

37. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 36, inclusive, as though set forth in full.

38. Defendants, and each of them, intentionally, recklessly, or negligently placed, maintained, purchased, used, or disposed of Hazardous Substances, including without limitation, petroleum, 1,1-DCA, 1,2-DCA, PCBs, and other waste products in the soil, containers, sewer lines, storm drains, systems, and/or equipment in such a manner as to constitute a nuisance, in that Defendants, and each of them, allowed such Hazardous Substances to enter the soil and/or the groundwater at and/or near the Property. Defendants, and each of them, thereby proximately caused the contamination of the Property, which contamination continues to cause daily damage and injury to Plaintiff and to the environment at the Property, and interferes with Plaintiff's use and enjoyment of the Property.

39. The actions of Defendants, and each of them, constitute a continuing public and private nuisance within the meaning of California Civil Code sections 3479-3481. Plaintiff has not consented to the continuing acts of nuisance committed by Defendants, and each of them.

40. The Property contamination caused by Defendants' continuing nuisance is capable of being abated. Yet, Defendants, and each of them, have refused or otherwise failed to abate these nuisances.

41. Plaintiff has suffered special damages associated with this continuing nuisance, including but not limited to, the costs of assessing, characterizing and cleaning up the Property.

42. The acts of Defendants, and each of them, have proximately caused the Property to be contaminated, which continues to constitute a nuisance to, and inflict damage on, Plaintiff and the environment on a daily basis. Such damage is unique and special to Plaintiff, as compared to the public.

43. As a direct and proximate result of the nuisance created by Defendants, and each of them, and the continuing injury caused therefrom, Plaintiff has been damaged, and will continue to be damaged, in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

(Continuing Trespass)
(Against All Defendants)

44. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 43, inclusive, as though set forth in full.

45. As a direct and proximate result of the acts or omissions of Defendants, and each of them, Plaintiff's property has become physically invaded by the release of the Hazardous Substances constituting the Property contamination.

46. The intentional, reckless, or negligent use and handling by Defendants, and each of them, of the Hazardous Substances has proximately caused the unauthorized and wrongful deposit of the Hazardous Substances constituting the Property contamination on and/or under the Property, which constitutes a continuing trespass on the Property.

47. Plaintiff did not consent to the entry or intrusion of the Hazardous Substances released by Defendants, and each of them, during the course of their operation and/or ownership at or near the Property. Defendants, and each of them, have refused and otherwise failed to remove the Hazardous Substances and Property contamination placed at and below the Property.

48. The Property contamination, which has resulted from the acts of Defendants, and each of them, continues to injure the Property on a daily basis.

49. As a direct and proximate result of the continuing trespass by Defendants, and each of them, Plaintiff has been damaged, and will continue to be damaged, in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

(Breach of Contract)
(Against All Defendants)

50. Plaintiff realleges and incorporates herein paragraphs 1 through 49, inclusive, by these references as though set forth in full.

51. Defendants are individually or jointly and severally liable for the duties and obligations of Paco Pumps under the Indemnification Agreement. Plaintiff is the successor in interest to GP Holdings under the Indemnification Agreement and is the holder of all right, title and interest thereunder with full capacity to enforce its terms.

52. Defendants, and each of them, have breached the Indemnification Agreement as Plaintiff has demanded that each perform and each has refused to perform.

53. As a result of the breach of the Indemnification Agreement, Plaintiff has been damaged, has incurred costs, and will continue to incur costs, including without limitation the cost

of remediation of the contamination of the Property and compliance with the requirements of the Agencies.

54. Plaintiff seeks an order from this Court specifically enforcing the terms of the Indemnity Agreement directing PCC to perform the obligations of Paco Pumps under the Indemnification Agreement.

55. The Indemnification Agreement provides at Paragraph F that Indemnitor shall pay the attorneys' fees of any successor in interest to GP Holdings. Plaintiff, as successor to GP Holdings, has incurred attorneys' fees and will continue to incur attorneys' fees to enforce the terms of the Indemnification Agreement and is entitled to recover from each of the successors to Paco Pumps all attorneys' fees incurred by Plaintiff in this action.

## SIXTH CLAIM FOR RELIEF

(Injunctive Relief)
(Against All Defendants)

56. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 55, inclusive, as though set forth in full.

57. As a proximate result of Defendants' failure to provide corrective action and abide by the terms of the Indemnification Agreement, Plaintiff and the public at large have suffered, and continue to suffer, great and irreparable harm because environmental harm has and continues to occur which could affect the public health, safety, and welfare.

58. Plaintiff cannot be fully compensated in damages and is without an adequate remedy at law because: (a) the harm to the Property cannot be fully recompensed by damages; (b) the exact amount of any compensable damage suffered by Plaintiff and the public at large will be difficult to ascertain; and (c) the public policy of the State of California to protect, rehabilitate, and enhance to the fullest extent possible the environmental quality of the State will be frustrated and avoide if Defendants are allowed to continue thwarting their duties under the Indemnification Agreement and as prior owners or operators of the Property.

59. The issuance of an injunction would further the public interest to preserve and enhance the environment. An injunction would not be a burdern to any of the Defendants, as they have agreed to implement corrective action.

60. Plaintiff requests a mandatory injunction compelling the specific performance of the obligation of Paco Pumps under the Indemnity Agreement directing PCC to perform all acts necessary to assess, characterize, remove or remediate the contamination at the Property and to comply with all requirements of the responsible government agencies.

**SEVENTH CLAIM FOR RELIEF**

(Declaratory Relief)
(Against All Defendants)

61. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 60, inclusive, as though set forth in full.

62. There has arisen and now exists an actual controversy between Plaintiff and Defendants regarding the parties' respective rights and obligations regarding past and future costs to assess, characterize and/or clean up the Property contamination.

63. Plaintiff contends that the acquisition of Paco Pumps by PCC was a merger with the ongoing operation of PCC, and that PCC had control of the management and operations of Paco Pumps and partially performed under the Indemnification Agreement, ratifying said merger or control, and that PCC is solely liable for the duties and obligations of Paco Pumps under the Indemnity Agreement.

64. Defendants, and each of them, contend that they have no liability under the Indemnification Agreement by assumption or otherwise, that each of them acquired Paco Pumps free and clear of any liability under the Indemnification Agreement, that each of them had no control of the management and operations of Paco Pumps, and that the acquisition by each defendant of Paco Pumps was not a merger with their respective operations.

65. Plaintiff contends that Defendants, and each of them, are liable for all such past and future costs pursuant to CERCLA, HSAA, other federal and state laws, the Indemnification Agreement and the common law. Plaintiff further contends that Defendants must defend, indemnify and hold Plaintiff harmless for all such past and future costs and any and all other damage suffered by the Plaintiff arising from or relating to the Hazardous Substances at, about, or beneath the Property. Plaintiff is informed and believes that each defendant disputes Plaintiff's contentions.

66. A judicial determination of the liability of each of Defendants is necessary and appropriate at this time in order that Plaintiff may ascertain its rights against the Defendants.

67. A declaration of the parties' rights under the Indemnification Agreement is necessary to resolve this dispute.

68. Plaintiff requests that this Court enter the declaratory judgment prayed for herein and retain jurisdiction over this action to grant Plaintiff such further relief against Defendants as is necessary and proper to effectuate the Court's declaration.

69. The Indemnification Agreement provides at Paragraph F that Indemnitor shall pay the attorneys' fees of any successor in interest to GP Holdings. Plaintiff, as successor to GP Holdings, has incurred attorneys' fees and will continue to incur attorneys' fees to enforce the terms of the Indemnification Agreement. As a result, Plaintiff is entitled to recover from each of the successors to Paco Pumps all attorneys' fees incurred by Plaintiff in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

A. For a declaration that Defendants are liable for all past and future response costs, including without limitation, costs incurred or to be incurred to assess, characterize, remove or remediate the Hazardous Substances at, about or beneath the Property;

B. For a judgment declaring that

1) Plaintiff is the successor in interest to GP Holdings;

2) PCC is the successor in interest to Paco Pumps and is liable individually or jointly and severally for Paco Pumps' obligations under the Indemnification Agreement;

C. For a mandatory injunction compelling the specific performance of the obligation of Paco Pumps under the Indemnification Agreement directing PCC to perform all acts necessary to assess, characterize, remove or remediate the contamination at the Property and to comply with all requirements of the responsible government agencies;

D. For compensatory damages in an amount to be proven at trial, including without limitation, past and future costs to assess, characterize, remove or remediate the Hazardous

Substances at, about or beneath the Property and damages arising from the diminution in the value of Plaintiff's interest at the Property;

E. For all incidental and consequential damages, in an amount to be proven at trial;

F. For pre-judgment interest on all such damages at the maximum rate allowed by law from the time Plaintiff incurred the costs and damages;

G. For retention of jurisdiction of this action by this Court after entry of the requested declaratory judgment in order to grant Plaintiff such further relief against Defendants as may be necessary or proper to effectuate the declaration of this Court;

H. For all of Plaintiff's attorneys' fees incurred herein;

I. For Plaintiff's costs of suit; and,

J. For such other and further relief as the Court deems proper.

DATED: January 23, 2008

Respectfully submitted,

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: ______________________ (for)
GERALD M. MURPHY
Attorneys for Plaintiff 9201 SAN LEANDRO, LLC, a California limited liability company

301028613.2